| U.S. BANK NATIONAL | : | CASE NO. 2:19-cv-11553 |
| ASSOCIATION, AS TRUSTEE FOR | : | |
| VELOCITY COMMERCIAL | : | |
| CAPITAL LOAN TRUST 2018-2, | : | (Judge Terrence G. Berg) |
| | : | |
| Plaintiff, | : | |
| | : | (Mag. Mona K. Majzoub) |
| vs. | : | |
| | : | |
| THE AGENCY REALTY | : | |
| EXECUTIVES, LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER APPOINTING RECEIVER

This matter is before the Court on the Motion of Plaintiff U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2018-2 (the "Plaintiff") to Appoint Receiver (the "Motion"). The Court has reviewed the pleadings. Based upon the pleadings and the evidence, the Court finds the Motion well-taken and the same is GRANTED.

It is therefore ORDERED, ADJUDGED, and DECREED as follows:

**1.      Appointment of Receiver.**

1.1      PRODIGY PROPERTIES [by and through its Manager Jeff Lane] (the "Receiver") hereby is appointed receiver of the Receivership Property (as defined below), effective upon the Receiver posting a bond as required below and filing an oath in the form attached to this Order as **Exhibit B** (the "Effective Date"). The Receiver's duty to act as receiver is subject to the terms of this Order.

1.2     As of the Effective Date, the Receiver is authorized and directed to take immediate possession and full control of the Receivership Property, to the exclusion of Defendant The Agency Realty Executives, LLC (the "Borrower") and to take such other actions as the Receiver deems reasonable and appropriate to take possession of, to exercise full control over, to prevent waste, and to preserve, manage, secure, and safeguard the Receivership Property.  The Borrower shall have neither possession nor control of, nor any right to Income (as defined below) derived from, the Receivership Property.

1.3     The Receiver shall take possession of and receive from all depositories, banks, brokerages, and otherwise (collectively, "Financial Institutions"), any money on deposit in all such Financial Institutions belonging to or arising from the operation of the Receivership Property, whether such funds be in accounts titled in the name of the entity or not.  All Financial Institutions are directed to deliver such deposits to the Receiver and such records as the Receiver may reasonably request with respect to such accounts.   The Receiver may indemnify the Financial Institution upon whom such demand is made, and is empowered to open or close any such accounts.

1.4     The Borrower and all of its employees, agents, and representatives are ordered to cooperate with the Receiver in the transition of the management of the Receivership Property to the Receiver and on the Effective Date turn over to the Receiver all of the following pertaining to the Receivership Property:

(a)     All keys.

(b)     Year-end 2017 operating statements, year-end 2018 operating statements, and year-to-date 2019 operating statements.

(c)     All on-site employee payroll records and employee files and applications.

(d)     An inventory of all equipment, furniture, vehicles, and supplies.

(e)     All information about customers, current orders, and accounts receivable.

(f)     All existing service contracts.

(g)     All pending bids for contractor work.

(h)     All insurance policies on the Receivership Property and their terms.

(i)     Information regarding all insurance claims submitted in the past three (3) years.

(j)     Site plans, specifications, floor plans, drawings, measurements, etc.

(k)     Documents identifying and summarizing all pending litigation (excluding this action).

(l)     All documents, books, records and computer files, computer equipment, software, management files, equipment, furniture, supplies, and all passwords needed to access all software and computer files, and e-mail accounts maintained by the Borrower both at the offices of the Borrower and off-site including, but not limited to, all records concerning the Income, and the operation and management of the businesses of the Borrower.

(m)     All documents containing formulas, trade secrets, methods, and processes necessary to the manufacturing of any products made by the Borrower.

(n)     All documents reflecting payables and vendor information.

(o)     All information concerning real estate taxes and personal property taxes.

(p)     A list of all utilities and utility accounts.

(q)     All leases including all communication/correspondence files.

(r)     Documents pertaining to all pending new leases/renewals.

(s)     A current rent roll including, but not limited to, lease start and end dates.

(t)     Tenant contact names and telephone numbers.

(u)     The occupant ledgers.

(v)     All security deposits, security deposit accounts, and an accounting for all security deposits.

(w)     The petty cash, if any.

(x)     A current aged accounts receivable/delinquency report.

(y)     An aged listing of all trade payables and other payables.

(z)     A list of all historical operating expenses for the Property.

(aa)     Such other records pertaining to the management of the Receivership as may be reasonably requested by the Receiver.

1.5     The Borrower is under a continuing obligation to turn over all items listed in Section 1.4 after the Effective Date.

1.6     The Borrower and its employees, officers, members, and directors are prohibited from removing any personal property belonging to the Borrower, or diverting any Income.

1.7     The Borrower shall fully cooperate with the Receiver in adding the Receiver and the Plaintiff as additional insureds and Plaintiff as the loss payee on all insurance relating to the operation and management of the Receivership Property including, but not limited to, fire, extended coverage, auto and van coverage, property damage, liability, fidelity, errors and omissions, and workers compensation, and modifying the policies if deemed appropriate by the Receiver. The Borrower and its employees, agents and representatives are prohibited from canceling, reducing, or modifying any and all insurance coverage in existence with respect to the Receivership Property.

## 2.      Receiver's Duties and Authority.

2.1     The Receiver shall be vested with the following authority, powers, and duties:

(a)     To maintain, secure, manage, operate, repair, and preserve the Receivership Property in such condition as may be deemed advisable by the Receiver in its reasonable discretion.

(b)     To change any and all locks to the Receivership Property and limit access to some or all of the Receivership Property as the Receiver deems appropriate.

(c)     To assume control over the Receivership Property and to collect and receive all Income.

(d)     To make routine repairs and incidental alterations to the Receivership Property, as may be necessary, including, but not limited to, electrical,

plumbing, carpentry, masonry, and any other routine repairs or incidental alterations as may be required in the course of the ordinary maintenance and repair of the Receivership Property.

(e) To take such action as deemed appropriate in the Receiver's discretion to comply with any orders or notices of violation affecting the Receivership Property issued by any federal, state, county, or municipal authority having jurisdiction thereof.

(f) To prepare and maintain complete books, records, and financial reports of the Receivership Property in a form acceptable to the Court.

(g) To allow the Plaintiff, its counsel and appraisers and other independent third party consultants engaged by the Plaintiff access to the Receivership Property at all reasonable times to inspect the Receivership Property and all books and records, and to cooperate with the Plaintiff, its counsel, appraisers, and other independent third-party consultants to evaluate the Receivership Property.

(h) To retain, hire, or discharge employees of the Borrower (none of whom are, or shall be deemed to be, employees of the Plaintiff or the Receiver).

(i) To establish pay rates for any employees, officers, or directors of the Borrower.

(j) To review existing worker's compensation, disability, general liability, and "all risks" hazard insurance and to retain, modify, or purchase such insurance, and name the Plaintiff and the Receiver as additional insureds, as the Receiver deems appropriate for the Receivership Property's preservation and protection.

(k) To open and maintain a separate account with a federally insured banking institution or savings association with offices in this State from which the Receiver shall disburse all authorized payments as provided in this Order. The Receiver may use the Borrower's tax identification number to open the account. All funds received by the Receiver pertaining to the Receivership Property shall be held in trust in said account, and shall not be comingled with other funds collected by the Receiver for its own account or as an agent for others, until disbursed as provided by this Order.

(l) To receive and endorse checks pertaining to the Receivership Property either in the Receiver's name or in the Borrower's name.

(m) To pay all appropriate real estate taxes, personal property taxes, and any other taxes or assessments against the Receivership Property, if the Receiver deems appropriate in its discretion. Neither the Receiver nor the

Receivership Property shall be liable for any income or commercial activity tax owed by the Borrower.

(n)     To prepare and file any tax returns necessary to the operation of the Receivership Property as may be required by law. The Receiver shall not be responsible for the preparation and filing of any tax returns for the Borrower or its affiliates, (including income, personal property, commercial activity, gross receipts, sales and use, or other tax returns) other than to reasonably cooperate in providing the Borrower with information in the Receiver's possession that may be reasonably necessary for the Borrower or its affiliates to prepare and file its returns. The Borrower shall provide to the Receiver any information needed to file any tax returns for the Receivership Property.

(o)     To operate the Receivership Property under any existing name or trade name (or a new name, if the Receiver deems it appropriate to do so).

(p)     To determine as soon as reasonably possible and report to the Court whether any Income previously received by the Borrower has been used for purposes other than for the maintenance, management, and expenses of the Receivership Property.

(q)     To open and review mail directed to the Borrower and its representatives pertaining to the Receivership Property. The Receiver may also take exclusive possession and control, by demand to the U.S. Postal Service in the name of the Receivership, of any postal boxes that are or were being used by the Borrower for the receipt of income or other mail pertaining to the Receivership Property.

(r)     To seek assistance of law enforcement officials as necessary to preserve the peace and protect the Receivership Property.

(s)     To employ attorneys, accountants, agents, and other professionals as the Receiver may from time to time deem appropriate and on such terms and conditions as the Receiver deems appropriate. The Receiver is specifically authorized to retain the law firm of Robbins Kelly Patterson & Tucker to represent it in any legal matters related to the Receivership.

(t)     To initiate, prosecute, defend, compromise, adjust, intervene in, or become party to such actions or proceedings in state or federal court as may, in its opinion and discretion, be necessary or proper for the protection, maintenance and preservation of the Receivership Property or carrying out the terms of this Order.

(u)     To execute, cancel, or modify lease agreements or extensions of leases.

(v)     To reject any leases or unexpired contracts of the Borrower that are burdensome on the Receivership Property.

(w) To enforce any valid covenant of any existing lease.

(x) To take any and all actions not specifically enumerated herein that are, in the Receiver's judgment, necessary to properly and adequately manage, control, operate, maintain, and protect the Receivership Property.

## 3. Receiver's Authority Subject to Approval.

3.1     In carrying out the duties contained in this Order, the Receiver is authorized upon

Approval, but is not required:

(a) To execute, cancel, modify, renegotiate or abrogate all service, maintenance, or other contracts relating to the operations of the Receivership Property, but subject to Approval for contracts in excess of $5,000. All such contracts are to be terminated upon a sale or disposition of the Receivership Property or termination of the Receivership.

(b) To engage contractors and skilled trades on a competitive bid basis to maintain the Receivership Property, and to execute such contracts for such purposes as the Receiver deems appropriate, if the aggregate amount will exceed $5,000, but without Approval for a life-threatening or other health or safety emergency.

(c) To borrow funds for purposes relating to the operation of the Receivership Property. The Receiver shall not borrow funds without first providing the Plaintiff, by advance written notice, a reasonable opportunity to elect to advance funds required by the Receiver.

(d) To contest, protest, or appeal any ad valorem tax or assessment, real estate tax, personal property tax, or other tax or assessment pertaining to the Receivership Property. (Any refund or reimbursement of taxes, whether paid by the Receiver or the Borrower, shall be deemed "Income" to be applied as provided herein.)

## 4. Sale of Receivership Property.

4.1     The Receiver is authorized, and the Court appoints the Receiver as the Borrower's

attorney-in-fact, to market for sale all or any portion of the Receivership Property on behalf of,

and in the name of, the Borrower, subject to the following conditions precedent:

(a) The Receivership Property has not been sold at a foreclosure sale.

(b)     The sale shall be commercially reasonable to a bona fide third-party purchaser as determined by the Receiver in its reasonable business judgment.

(c)     No sale shall be made to the Receiver, or to any person or entity with a beneficial interest in the Receiver, or to any person or entity in which the Receiver has a beneficial interest.

(d)     All real estate taxes shall be current at the time of the sale or shall be brought current with the sale proceeds.

(e)     The other terms and conditions of the sale shall be appropriate in the reasonable business judgment of the Receiver.

(f)     The final sale of the Receivership Property shall be subject to the final approval of the Court and all appropriate statutes.

4.2     The Receiver and the Receivership Property shall not be bound by any existing brokerage or listing agreement affecting the Receivership Property.  The Receiver is specifically authorized to retain the brokerage arm of Prodigy Properties as the broker and listing agent for the listing, marketing, and sale of the Property.  The Borrower is enjoined from retaining a brokerage firm for the Receivership Property or otherwise interfering with the Receiver's retention of a brokerage firm for the Receivership Property.

4.3     Subject to sections 4.1 and 4.2, the Receiver has the authority with respect to the sale of Receivership Property to do and perform all and every act desirable, proper, or necessary with respect to the Receivership Property including, without limitation, the authority to execute and deliver deeds of conveyance, bills of sale, any mortgage loan assumption and/or modification agreement, the closing statement, and all other documents necessary or desirable in connection with the sale of the Receivership Property, all on behalf of and in the name of the Borrower.

4.4     The Receiver is authorized to and shall retain three disinterested real estate brokers or agents licensed by the State of Michigan to generate broker opinions of value for the

Receivership Property. These broker opinions of value shall satisfy any appraisal requirement under any applicable statutes.

**5.** **Extent of Receiver's Authority.**

5.1 Although the Receiver shall have possession and control of the Receivership Property, the Receiver shall not take title to the Receivership Property. Title to the Receivership Property shall remain in the name of Borrower (other than Income and other Receivership Property distributed to the Plaintiff as provided in this Order), unless foreclosed upon by the Plaintiff or sold by the Receiver as provided above, in which cases title to the Receivership Property will remain in the name of the Borrower until the delivery of a judicial deed or the deed from the Receiver, as the case may be.

5.2 Without limiting or expanding the foregoing, the Receiver is authorized to exercise all powers generally available and shall be subject to all the duties of a receiver under the laws of the United States and the State of Michigan that may be incidental to the management of the Receivership Property as described in this Order. The Receiver shall have any additional powers that are provided by law and that the Court may from time to time direct or confer.

5.3 The Receiver shall, during the pendency of this action, have the right to apply to this Court for further instructions or directions.

5.4 The authority granted to the Receiver is self-executing, unless the action requires Approval. The Receiver is authorized to act on behalf of, and in Borrower's name (or the

Receiver's name), as the Receiver deems appropriate without further order of this Court and without personal recourse against the Receiver (subject to the General Provisions).

5.5     The Receiver is authorized to accept advances from the Plaintiff for operating expenses, working capital, or improvements.  All advances to the Receiver by the Plaintiff for the benefit of the Receivership Property, including any advances for working capital or improvements, and any other costs and expenses incurred by the Receiver under this Order, shall be deemed protective future advances under the Borrower's mortgage and security agreements with the Plaintiff.  Any such protective future advances shall be fully secured by the Plaintiff's priority liens and security interests against the Receivership Property.  Without derogating from the foregoing, any and all funds advanced by the Plaintiff to the Receiver pursuant to this Order shall: (a) be deemed made pursuant to contract; (b) be added to the amount of the indebtedness owed, jointly and severally, by the Borrower to the Plaintiff; (c) be deemed secured by the liens and security interests in favor of the Plaintiff on the Receivership Property to the same extent and with same priority as the other indebtedness secured by all existing liens and security interests in favor of the Plaintiff; and (d) accrue interest at the highest rate chargeable against the Borrower under any existing loan between the Borrower and the Plaintiff.  All such funds advanced, including interest on advances, shall be deemed a prior lien before the repayment of any and all other claims against the Receivership Property (except for taxes and assessments having first priority as a matter of law) or proceeds of either of them.  The Receiver is authorized to issue receivership certificate(s) to secure any such protective future advances by the Plaintiff, but subject to Approval.  Notwithstanding the foregoing, the Plaintiff shall have the right to loan

funds to the Receiver, as receiver, on terms which are different that the terms under any existing loan between the Borrower and the Plaintiff. Nothing in this section shall be construed to require the Plaintiff to advance or loan funds to the Receiver for any reason.

**6.**     **Receivership Property and Income.**

    6.1    "Receivership Property" means and includes:

    (a)    The "Mortgaged Property", as described in the attached **Exhibit A**.

    (b)    All tangible and intangible personal property located at or related to the Mortgaged Property.

    (c)    All Income.

    (d)    All permits, licenses, leases, other contracts, and other intangible property pertaining to the operation of the Mortgaged Property.

    (e)    All trade names, trademarks, and intellectual property owned or used by the Borrower pertaining to the operation of the Mortgaged Property.

    (f)    Any refund or reimbursement of taxes, whether for taxes paid by the Receiver or the Borrower, and whether pertaining to any tax period before or after the entry of this order, and the right to institute or continue any contest, protest, or appeal of any ad valorem tax or assessment, real estate tax, personal property tax, or other tax or assessment pertaining to the Mortgaged Property.

    (g)    Any fixtures, trade fixtures, and tenant improvements or every kind or nature located in or upon or attached to, or used or intended to be used in connection with the operation of the Mortgaged Property and any buildings, structures, or improvements located on the Mortgaged Property (to the full extent of the Borrower's interest in such).

    (h)    All permits, licenses, deposits (including earnest money deposits), other contracts, and other intangible property pertaining to the Mortgaged Property and the operations of the Mortgaged Property.

    (i)    All other property, estate, right, title, and interest as described in the mortgage, assignment of rents, promissory note, and other loan documents.

    (j)    All books, records, accounts, and documents that in any way relate to the Receivership Property or Income.

6.2    The term "Income" means, collectively, all cash, cash on hand, checks, cash equivalents, credit card receipts, demand deposit accounts, bank accounts, cash management or other financial accounts, bank or other deposits, and all other cash collateral (all whether now existing or later arising); current and past-due earnings, revenues, issues and profits, accounts, and accounts receivable (all whether unpaid, accrued, due, or to become due); all claims to issues, profits, income, cash collateral, and all other gross income derived from the business operations of the Borrower related to the Receivership Property, regardless of whether earned before or after entry of this Order.

6.3    Income shall be applied as follows (but subject to the lien rights granted to the Plaintiff):

(a)    To the Receiver's approved fees and expenses;

(b)    To the current post-receivership operating expenses including, but not limited to, any employee payroll expenses, any real estate taxes, and any other taxes arising from normal business operations incurred during the Receivership. The Receiver shall not make disbursements of more than $5,000.00 toward post-receivership operating expenses without Approval except for life-threatening or other health or safety issues;

(c)    To the repayment of any receivership certificate securing any protective advances made by the Plaintiff to the Receiver;

(d)    To the balance due to the Plaintiff until paid in full; and

(e)    Any surplus to be held pending further order of the Court.

6.4    The Receiver may make interim distributions of Income to the Plaintiff after payment of current operating expenses, if the Receiver's "cash on hand" exceeds $10,000.00 and if he otherwise deems appropriate in his discretion.

7. **Property Management Company.**

7.1     The Receiver and the Receivership Property shall not be bound by any existing property management agreement affecting the Receivership Property.    The Receiver is specifically authorized to retain the property management arm of Prodigy Properties to manage the Receivership Property under the compensation terms set forth in **Exhibit C**.  The Borrower is enjoined from retaining a management firm for the Receivership Property or from otherwise interfering with the Receiver's retention of a management firm for the Receivership Property.

8. **Utility Accounts.**

8.1     The Receiver and the Receivership Property shall not be liable for the payment of utility charges of any kind (including, but not limited to, gas, electric, water, telephone, cable television, and satellite) incurred prior to the date of this Order.

8.2     Utility companies providing service to the Receivership Property shall, upon request by the Receiver, start new accounts in the name of the Receiver, as receiver for the Receivership Property, at a zero balance.

8.3     Any individual or entity receiving a copy of this Order is hereby enjoined and restrained from discontinuing service to the Receiver or the Receivership Property based upon non-payment of such utilities prior to the date of this Order and from attempting to collect utility charges from the Receiver pre-dating the date of this Order.

8.4      Each utility company or entity providing service to the Receivership Property shall forthwith transfer any deposits which it holds to the exclusive control of the Receiver and

shall be prohibited from demanding that the Receiver deposit additional funds in advance to maintain or secure such service.

9. **Receiver Compensation, Reports, Accounting, and Bond.**

9.1     The Receiver shall be compensated as set forth in **Exhibit C**.  The Receiver is authorized to pay its compensation and all ordinary and reasonable fees, costs, and expenses of the Receivership, including legal fees and expenses, as they become due.

9.2     The Receiver's Reports (as defined below) shall include an itemized statement setting forth the compensation paid to the Receiver for the services rendered and costs incurred by it as receiver during the preceding three months, reflecting the dates of service, time spent, and the nature of the services rendered and costs incurred.  Unless any party entitled to receive said Receiver's Report as provided in Section 9.7 files with the Court and serves on the Receiver and all other parties an objection to said Receiver's Report within ten (10) days following service of the Receiver's Report, the compensation set forth in the Receiver's Report shall be approved, subject to the Court's review of all compensation paid to the Receiver in connection with the Court's review and approval of the Receiver's final accounting.

9.3     The Receiver's compensation shall be paid: (1) first from the Income from the Receivership Property, and (2) next, by the Plaintiff as a protective advance, but only to the extent that the Income is insufficient to pay the Receiver's compensation.  The Receiver shall be permitted to deduct its fees directly from the Receivership Property Income or other proceeds of the Receivership Property.  The Receiver is authorized to issue receivership certificate(s) to

secure any protective advances made by the Plaintiff to pay the Receiver's compensation, but subject to Approval.

9.4     Nothing in this Order shall require the Receiver to advance funds other than from Income without a bond or security for payment satisfactory to the Receiver.  The Receiver shall not advance funds other than from Income without Approval.

9.5     By the 20th day after the end of each quarter the Receiver shall prepare a Receiver's Report (including a detailed accounting report and other appropriate information relative to the administration of the receivership and as required by law) pertaining to the operations of the Receivership Property.

9.6     The Receiver's Reports shall be filed with the Clerk of the Court and served upon the parties as provided in Section 9.7.

9.7     The Receiver shall furnish the Receiver's Reports to the following by regular First Class U.S. Mail, postage prepaid:

All other counsel of record.

9.8     The Receiver shall post a surety bond from an insurance company licensed to do business in this State in an amount not less than $1,000.00.  The cost of the bond is an expense of the Receivership.

**10.    Confidentiality.**

10.1    "Confidential Information" means any non-public information.

10.2    The parties to this action, their counsel, and all those in active concert or participation with them, who receive actual notice of this Order, or otherwise, shall keep all

Confidential Information provided by the Receiver confidential, and all such persons are prohibited from disclosing any Confidential Information to anyone other than the parties to this action and their counsel without specific order of this Court.

## 11. <u>Approval.</u>

11.1    Whenever this Order uses the term "subject to Approval" or "Approval," the Approval shall not be deemed given except by (1) a specific "Order of Approval" from this Court; or (2) the consent of the Plaintiff or its counsel given in writing.

## 12. <u>Term and Final Accounting.</u>

12.1    This Receivership shall continue until further order of the Court.

12.2    The Receiver can only be removed in the Court's equitable discretion upon a motion for cause.  If the Receiver is removed, the Court may appoint a successor receiver.

12.3    Immediately upon termination of the Receivership, the Receiver shall turn over to the Plaintiff or its designee(s), all of the Receivership Property unless otherwise ordered by the Court.

12.4    Neither the termination of the Receivership nor the Receiver's removal will discharge the Receiver or the Receiver's bond.

12.5    The Receiver shall submit a final accounting (with copies to the recipients of Receiver's Reports as identified above) for approval by the Court within thirty (30) days after the termination of the Receivership or the Receiver's removal.

12.6    Only after the Court approves the Receiver's final accounting may the Receiver be discharged and the Receiver's bond will be cancelled.

**13.    General Provisions.**

13.1    The Receiver is only the receiver of the Receivership Property (as defined above), and not of any other assets, activities, business, or operations of the Borrower.  The Receiver's responsibilities, duties, and liabilities are expressly limited to those stated in this Order as the same are related to the Receivership Property.

13.2    No person or entity may file suit against the Receiver, its employees, agents, or its attorneys, or take other action against the Receiver or the Receiver's bond, without first obtaining an order of this Court permitting the suit or action upon motion and an evidentiary hearing; provided, however, that no prior court order is required to file a motion in this action to enforce the provisions of this Order or any other order of this Court in this action.

13.3    The Receiver and its employees, agents, and attorneys shall have no personal liability in connection with any liabilities, obligations, liens, citations, code violations, or amounts owed to any of the Borrower's creditors, taxing authorities, or bodies politic because of its duties as Receiver.  Nothing in this Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determined in accordance with Michigan law.

13.4    The Receiver and the Receivership Property shall not be liable for the payment of goods or services provided to the Borrower prior to the date of this Order.  Any individual or entity receiving a copy of this Order is hereby enjoined and restrained from discontinuing service to the Receiver or the Receivership Property based upon non-payment of such goods or services prior to the date of this Order and from attempting to collect taxes, assessments, and invoices from the Receiver pre-dating the date of this Order.

13.5　　All creditors, claimants, bodies politic, parties in interest, and their respective attorneys, agents, employees, and all other persons, firms, and corporations, hereby are, jointly and severally, enjoined and stayed from commencing or continuing any action at law or suit or proceeding in equity to foreclose any lien or enforce any claim against the Receivership Property, the books, records, revenues, profits, and related assets associated with the Receivership Property, or against the Receiver in any Court.　These parties are further stayed from executing or issuing or causing the execution or issuance out of any Court of any writ, process, summons, attachment, subpoena, replevin, execution or other process for the purpose of compelling production of, impounding or taking possession of, or interfering with, or enforcing any claim or lien upon any of the Receivership Property or the books, records, revenues, profits, and related assets associated with the Receivership Property, or upon the Receiver, and from doing any act or thing whatsoever to interfere with the Receiver in the discharge of its duties in this proceeding or within the exclusive jurisdiction of this Court over the Receivership Property and the books, records, revenues, profits and related assets associated with the Receivership Property.　The Receiver further does not have authority to testify or produce documents or other things in response to a state or Federal subpoena unless the subpoenaing party first obtains leave of this Court.

13.6　　The Receiver and its employees, agents, and attorneys shall have no personal liability and they shall have no claim asserted against them or the Receiver's bond relating to the Receiver's duties under this Order regarding any action taken or not taken by them in good faith. The Receiver and its employees, agents, and attorneys shall not be liable for any mistake of fact

or error of judgment or for any acts or omissions of any kind, unless caused by gross negligence, gross or willful misconduct, malicious acts, or the failure to comply with this Court's orders. The Borrower, through the value of the Receivership Property, shall indemnify, hold harmless, and defend the Receiver, its employees, agents, and attorneys from and against any and all liabilities, costs, and expenses including, but not limited to, the cost of any bond required by this Order and legal and other fees and expenses incurred by them arising from or in any way connected to the performance of the Receiver's duties.

13.7    Nothing in this Order shall be construed such that the Receiver is considered to be in a fiduciary relationship with the Plaintiff, any of the Defendants, or all of them collectively.

13.8    The Borrower, its employees, agents, and representatives, and all those in active participation or concert with them who receive notice of this Order, and all those having claims against the Receivership Property who receive notice of this Order, are enjoined from, and shall not:

> (a)    **Commit Waste.**  Commit or permit any waste on all or any part of the Receivership Property, or suffer or commit or permit any act on all or any part of the Receivership Property in violation of law, or remove, transfer, encumber, or otherwise dispose of any of the Receivership Property.
>
> (b)    **Collect Income.**  Demand, collect, receive, discount, or in any other way divert or use any of the Income.
>
> (c)    **Terminate any Utility Service.**  Terminate or withhold any electric, gas, water, sewer, telephone, or other utility service supplying the Receivership Property, require any utility deposit, or otherwise interfere with the continued operations of the Receivership Property.
>
> (d)    **Interfere with the Receiver.**  Directly or indirectly interfere in any manner with the discharge of the Receiver's duties under this Order or the Receiver's possession of and operation, management, marketing, or sale of the Receivership Property.

(e) **Transfer or Encumber the Receivership Property.** Expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal, or in any manner whatsoever deal in or dispose of the whole or any part of the Receivership Property including, but not limited to, the Income, without prior court order.

(f) **Impair the Preservation of the Receivership Property.** Do any act that will, or that will tend to, impair, defeat, divert, prevent, or prejudice the preservation of the Receivership Property, including the Income, or the preservation of the Plaintiffs' interest in the Receivership Property and the Income.

13.9 The Receiver shall faithfully perform and discharge the Receiver's duties and obey the Court's orders.

13.10 The Receiver is subject to the personal jurisdiction of the Court.

13.11 The Receiver and its counsel are permitted to communicate *ex parte* with the Court and any magistrate referred to this matter, as well as their staff, on any matters related to the Receivership and the Receivership Property.

13.12 This Order and its terms shall be considered compliant with the Local Rules of the U.S. District Court for the Eastern District of Michigan and this Order shall take precedence in the event of a conflict between them.

13.13 The Receiver's duty to act as Receiver is subject to the Receiver's written acceptance and approval of the terms of this Order. Upon acceptance, the Receiver shall be bound by each and every term contained in this Order and each and every obligation of the Receiver imposed by this Order.

## 14. <u>Amendment of Order.</u>

14.1 This Order may be amended for cause after a motion or hearing.

**15.** **No Prejudice to Foreclosure or Lien Priority.**

15.1    This Order shall not prejudice the Plaintiff's foreclosure of any mortgage lien or security interest, or any action by the Plaintiff under any loan documents, or any of the Plaintiff's other claims as set forth in its Complaint or any amendments thereto.

15.2    Nothing in this Order shall be construed to adjudge or affect the relative lien priorities of all parties to this action.  Any dispute regarding the parties' relative lien priorities shall be resolved by further order of the Court.

**16.** **Final Appealable Order.**

16.1    This is a final appealable order and there is no just cause for delay in its entry.

ALL OF WHICH IS HEREBY APPROVED AND ORDERED THIS 23rd DAY OF December, 2019.

/s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

TENDERED BY:

*/s/ Zachary D. Prendergast*
Zachary D. Prendergast
*Attorney for Plaintiff U.S. Bank National*
*Association, as Trustee for Velocity*
*Commercial Capital Loan Trust 2018-2*

HAVE REVIEWED AND HAVE NO
OBJECTION:

*/s/ T.N. Ziedas (by ZDP w/ e-mail consent)*
T.N. Ziedas
Assistant United States Attorney
*Attorney for Defendant United States of*
*America, Department of the Treasury,*
*Internal Revenue Service*


*/s/ Moe Freedman (by ZDP w/ e-mail consent)*
Moe Freedman
*Attorney for State of Michigan,*
*Department of the Treasury*

ACCEPTED BY:

PRODIGY PROPERTIES

*/s/ Jeff Lane*
By: Jeff Lane, Manager

**EXHIBIT A**
**(LEGAL DESCRIPTION)**

Land situated in the City of Dearborn Heights, County of Wayne, State of Michigan, and described as follows:

Lot 599 and the South 15.00 feet of Lot 600, Valley Park Subdivision No. 2, as recorded in Liber 78, Page 24 of Plats, Records of Wayne County, Michigan.

# EXHIBIT B
## (OATH OF RECEIVER)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **U.S. BANK NATIONAL** | : | **CASE NO. 2:19-cv-11553** |
| **ASSOCIATION, AS TRUSTEE FOR** | : | |
| **VELOCITY COMMERCIAL** | : | |
| **CAPITAL LOAN TRUST 2018-2,** | : | **(Judge Terrence G. Berg)** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Mag. Mona K. Majzoub)** |
| **vs.** | : | |
| | : | |
| **THE AGENCY REALTY** | : | |
| **EXECUTIVES, LLC,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## <u>OATH OF RECEIVER</u>

The undersigned, being first duly sworn upon its oath, hereby states that it will faithfully and honestly discharge the duties of Receiver in the above-captioned action to the best of its abilities and will obey the orders of this Court.

PRODIGY PROPERTIES

_____

By: Jeff Lane, Manager

_____

Date

STATE OF OHIO         )

                                ) SS:

COUNTY OF _____ )

        Before me, the undersigned, a Notary Public in and for said County and State, personally appeared Jeff Lane, the Manager of Prodigy Properties, and acknowledged his execution of the foregoing Oath of Receiver on behalf of Prodigy Properties.

        Signed and sealed this ____ day of _____, 2019.


                                       _____
                                       Notary Public

My Commission Expires:

_____

County of Residence:
                                       _____
                                       Printed

_____

# EXHIBIT C
## (RECEIVERSHIP FEE SCHEDULE)

**RECEIVER FEE**

Instead of charging an hourly fee, the Receiver's fees are tied to actual results. Other than an hourly rate for court appearances, the Receiver's fees are based on fixed fees and a percentage of the sale price obtained. The Receiver's fee shall be 7.0% ($2,000 minimum per property) of the gross sale price of the receivership real estate in a marketed and court-approved sale. With the exception of personal appearances before the Court, this fee includes all staff time for service as Receiver, including supervision of the receivership property's management, marketing, advertising, property tours, negotiations, contract preparation, fund verification, buyer vetting, due diligence oversight, title company oversight, and closing coordination. This fee further includes the brokerage and disposition services of the brokerage arm of Prodigy Properties in marketing and selling the receivership property. Essentially, the receivership services and brokerage services are combined into a single fee instead of incurring the cost of retaining a receiver and separately paying a commission to a brokerage firm. As such, this fee is subject to the retention of the brokerage arm of Prodigy Properties as the exclusive broker and listing agent for the receivership property.

The Receiver and the brokerage arm of Prodigy Properties are also able to broker and conduct an auction of the receivership real estate, either live or online, in which case the Receiver Fee will be a 10% Buyer's Premium added to the highest bid accepted at auction or otherwise added to the purchase price of any sale resulting from the auction.

**MANAGEMENT FEE**

I.  One Time Start-Up Fee - $500 per property / month
    a. includes all pre-appointment due diligence work performed
    b. obtain and file court required receiver bond
    c. prepare and file court required oath of receiver
    d. open receivership bank account
    e. contact and meet with defendant to gather property information, keys, deposits, bank accounts, leases, plans, access, etc.
    f. initial property inspection – voluntarily w/ defendant or forcibly with law enforcement
    g. introduction and notification to tenants
    h. immediately address life / safety, property preservation and code violation issues
    i. begin rent / income collection
    j. shop and obtain property insurance estimates
    k. assess possibility of filing tax value appeal

    l.   prepare opinion of value report to assist in determining pricing and marketing strategy
    m.  create or transfer tenant files
    n.  coordinate utility turnover and negotiate $0 starting balances or re-payment plans
    o.  coordinate securing / alarming property if vacant
    p.  this is an all-inclusive fee that covers everything needed to begin the receivership

**II.** **Monthly Management Fee – $150 per property / month**
    a.  includes all typical management duties
    b.  property inspections
    c.  maintain accounting for property
    d.  reporting updates to plaintiff / plaintiff's counsel

**III.** **Court Reporting Fee - $150 per report**
    a.  prepare required report for judge
    b.  file report with clerk of courts
    c.  serve report to required parties
    d.  postage, office supplies and time is included in this fee

**IV.** **Wind Down Fee - $500 per property / month**
    a.  coordinate property / tenant turnover to new owner
    b.  attend and coordinate closing to convey property to new owner
    c.  pay final expenses
    d.  close receiver utility and service accounts
    e.  terminate insurance coverage and collect refunds for unused premiums
    f.  make final distributions to creditors
    g.  close receivership bank account
    h.  prepare final receiver report to terminate the receivership
    i.  have receiver bond released
    j.  this is an all-inclusive fee that covers everything necessary to convey the property and close the receivership

**MISCELLANEOUS FEES**
    a.  20% is added to contractors used by Prodigy to cover the vetting process, hiring process, coordination and oversight required.
    b.  Receiver will charge an hourly rate for court appearances, court preparation and anything outside the scope of the Management Fee. Receiver's hourly rate is $195, receiver staff rate is $95/ hour.